IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

5436, LLC,                              §
                                        §
            Plaintiff/                  §
            Counter-Defendant,          §
                                        §
v.                                      §
                                        §    CIVIL ACTION NO. H-08-3097
CBS CORPORATION,                        §
f/k/a Westinghouse Electric             §
Corporation,                            §
                                        §
            Defendant/                  §
            Counter-Plaintiff.          §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff/Counter-Defendant 5436, LLC's ("5436") Amended Motion to Dismiss Defendant/Counter-Plaintiff CBS Corporation's ("CBS") First Amended Counterclaim for Failure to State a Claim Under Rule 12(b)(6) ("5436's Motion to Dismiss") (Docket Entry No. 60).  CBS has filed Defendant/Counter-Plaintiff CBS's Response to Plaintiff/Counter-Defendant 5436's Amended Motion to Dismiss Counter-Plaintiff CBS's First Amended Counterclaim for Failure to State a Claim Under Rule 12(b)(6) ("CBS's Response") (Docket Entry No. 64).  For the reasons explained below, 5436's Motion to Dismiss will be granted in part and denied in part.

## I.  Background[1]

Westinghouse Electric Corporation ("Westinghouse"), a predecessor to CBS, owned a property located at 5436 Clay Street,

---

[1]Unless noted otherwise, the facts and procedural history presented below are drawn from the court's Memorandum Opinion and Order entered in this action on February 19, 2009.  See Memorandum Opinion and Order, Docket Entry No. 17.

Houston, Harris County, Texas ("the property"), from 1981 to 1996. Westinghouse operated an industrial valve repair and refurbishment facility on the property from 1981 to 1986.  In 1996 Westinghouse sold the property to Elliot Valve Ltd. ("Elliot").

Groundwater and soil samples taken as part of an environmental assessment of the property conducted in 2005 indicated significant concentrations of hazardous substances, including several volatile organic compounds ("VOCs").  In June of 2007 Elliot initiated an action in state court against CBS, as successor to Westinghouse, and other parties to recover remediation costs associated with removing the hazardous substances from the property.  On June 11, 2007, Elliot and CBS entered into a settlement agreement ("the Remediation Agreement") addressing the clean-up of the property. In the Remediation Agreement CBS agreed to reimburse Elliot for one-half of the cost of all remediation activities contemplated by the agreement, but CBS's total liability was not to exceed $100,000.

In February of 2008 Elliot entered into a contract to sell the property to 5436.  In the contract the parties agreed that Elliot would also convey to 5436 its "rights, if [5436] so desires, to the certain Remediation Agreement between [Elliot] and CBS, Inc. dated 6/11/07."  The sale of the property closed on March 17, 2008.

5436 notified CBS that it had received the rights under the Remediation Agreement by assignment and requested that CBS honor its obligations under the agreement to reimburse 5436 for half of remediation expenses incurred, up to $100,000.  5436 submitted invoices to CBS seeking reimbursement under the Remediation

Agreement for certain remediation expenses.[2]  CBS alleges that it disputed some of the submitted expenses, and refused to reimburse 5436 for any portion of the disputed expenses.[3]  CBS alleges, however, that it tendered payment for its share of the other, undisputed expenses.[4]  According to CBS, 5436 refused to accept CBS's payment.[5]  The parties also attempted to renegotiate the Remediation Agreement, but negotiations were not successful.

On October 17, 2008, 5436 filed this action against CBS under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the Texas Solid Waste Disposal Act ("TSWDA").  5436 seeks recovery of response costs and a declaratory judgment.

CBS moved for dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on November 7, 2008.  CBS argued that 5436's suit under CERCLA and TSWDA was really a contract action in disguise and, therefore, did not present a federal question.  Subject to its motion to dismiss, CBS also moved the court to stay the action and compel arbitration pursuant to the arbitration clause in the Remediation Agreement. On February 19, 2009, the court denied both motions.

---

[2]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 14.

[3]Id. ¶¶ 15-16.

[4]Id. ¶ 16.

[5]Id.

-3-

On May 19, 2009, CBS filed a Counterclaim against 5436 asserting claims for breach of the Remediation Agreement.[6]  With leave of the court, CBS filed its First Amended Counterclaim on August 12, 2009.[7]  In its First Amended Counterclaim, CBS asserts eight specific claims for breach of the Remediation Agreement.  For the breach of contract claims CBS seeks damages, specific performance, and/or attorney's fees.  CBS also seeks a declaratory judgment of its rights and obligations under the Remediation Agreement.  On August 24, 2009, 5436 filed the pending Amended Motion to Dismiss CBS's First Amended Counterclaim.

## II.  **Standard of Review**

When evaluating a motion to dismiss for failure to state a claim, the court "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . [and] matters of which [it] may take judicial notice." Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996).  The court must accept all of the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff.  In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).  All reasonable inferences should be drawn in the plaintiff's favor.  Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 371-72 (5th Cir. 2008).

---

[6]CBS's Counterclaim, Docket Entry No. 39.

[7]CBS's First Amended Counterclaim, Docket Entry No. 57.

-4-

Viewing the complaint in this manner, the court must ultimately determine whether "'the complaint states any valid claim for relief.'" Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 601 (1st ed. 1969)). Mere conclusory allegations, however, are not sufficient. Id. "[A] formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). At a minimum the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Id. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has" failed to adequately state a claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### III. **Analysis**

**A.  Elements of a Breach of Contract Claim**

The elements of a breach of contract claim under Texas law[8] are:  (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a

---

[8]The parties implicitly agree that Texas law governs CBS's breach of contract claims.

result of the defendant's breach.  <u>Bank of Texas v. VR Elec., Inc.</u>,
276 S.W.3d 671, 677 (Tex. App. -- Houston [1st Dist.] 2008, pet.
denied); <u>City of The Colony v. N. Tex. Mun. Water Dist.</u>, 272 S.W.3d
699, 739 (Tex. App. -- Fort Worth 2008, pet. filed); <u>Aquiar v.
Segal</u>, 167 S.W.3d 443, 450 (Tex. App. -- Houston [14th Dist.] 2005,
pet. denied).  If the plaintiff makes this showing, it is entitled
to the remedy of money damages -- the normal measure of which is
the "benefit of the bargain," i.e., the amount of money required
"to restore the injured party to the economic position it would
have been in had the contract been performed."  <u>City of The Colony</u>,
272 S.W.3d at 739.

     As an alternative to damages, a party may seek the equitable
remedy of specific performance.  <u>See</u> <u>Stafford v. Southern Vanity
Magazine, Inc.</u>, 231 S.W.3d 530, 535 (Tex. App. -- Dallas 2007, pet.
denied) ("Specific performance is an equitable remedy that may be
awarded upon a showing of breach of contract.").  "The purpose of
specific performance is to compel a party who is violating a duty
to perform under a valid contract to comply with his obligations."
<u>Griffin's Estate v. Sumner</u>, 604 S.W.2d 221, 225 (Tex. Civ. App. --
San Antonio 1980, writ ref'd n.r.e.).

     Texas courts have required plaintiffs seeking specific
performance to prove several elements in addition to the standard
breach of contract elements.  First and most importantly, the
plaintiff must show that there is no adequate remedy at law to
compensate it for its loss.  <u>South Plains Switching, Ltd. v. BNSF</u>

Ry. Co., 255 S.W.3d 690, 703 (Tex. App. -- Amarillo 2008, pet. denied) ("It is a fundamental rule of equity that specific performance may not be granted unless it is shown there is no adequate remedy at law."). In other words, the plaintiff must demonstrate that it "cannot be fully compensated through the legal remedy of damages or [that] damages may not be accurately ascertained." General Universal Sys., Inc. v. Lee, 379 F.3d 131, 153 (5th Cir. 2004) (citing Guzman v. Acuna, 653 S.W.2d 315, 318 (Tex. App. -- San Antonio 1983, writ dism'd); Griffin's Estate, 604 S.W.2d at 225). See also Stafford, 231 S.W.3d at 535 ("Specific performance is . . . an equitable remedy used as a substitute for monetary damages when such damages would not be adequate."); Horton v. Robinson, 776 S.W.2d 260, 267 (Tex. App. -- El Paso 1989, no writ) ("Specific performance is available to a party when damages will not adequately compensate the party for his loss, and he has no adequate remedy at law."). The plaintiff must also "plead and prove he was ready, willing, and able to timely perform his obligations under the contract."[9] DiGiuseppe v. Lawler, 269 S.W.3d 588, 593 (Tex. 2008). See also Henry S. Miller Co. v. Stephens, 587 S.W.2d 491, 492 (Tex. Civ. App. -- Dallas 1979, writ ref'd n.r.e.) ("When a party seeks specific performance, he is required

---

[9]The requirement that the plaintiff be ready, willing, and able to perform is separate and distinct from the requirement that the plaintiff must have tendered performance. See DiGiuseppe, 269 S.W.3d at 599 ("Offering to perform does not establish the ability to perform, nor does having the ability to perform demonstrate a tender of that ability. The law requires a demonstration of both before specific performance may be awarded unless the requirement of tender is excused.").

at all times to remain ready, willing and able to perform his contractual responsibilities according to the terms of the contract.").

Because specific performance is an equitable remedy, it is "not one of absolute right." Paxton v. Spencer, 503 S.W.2d 637, 642 (Tex. Civ. App. -- Corpus Christi 1973, no writ).  The decision of whether to grant the remedy ultimately "rests in the sound discretion of the trial court." Am. Apparel Prods., Inc. v. Brabs, Inc., 880 S.W.2d 267, 269 (Tex. App. -- Houston [14th Dist.] 1994, no writ).  Therefore, in addition to the necessary elements stated above, the Texas courts often consider other equitable factors.

For example, courts consider whether the long-term supervision of the court will be required to enforce the remedy, whether ordering specific performance will provide complete relief, and whether the order can be adequately enforced.  South Plains Switching, Ltd., 255 S.W.3d at 703 (citing Am. Hous. Res., Inc. v. Slaughter, 597 S.W.2d 13, 15 (Tex. Civ. App. -- Dallas 1980, writ ref'd n.r.e.)).  "A court generally will not decree a party to perform a continuous series of acts which extend through a long period of time and require constant supervision by the court." Id. (citing Canteen Corp. v. Republic of Tex. Props., Inc., 773 S.W.2d 398, 401 (Tex. 1985)).  Texas courts also evaluate the certainty and clarity of the essential terms of the contract.  See Guzman, 653 S.W.2d at 318 ("The essential elements of the contract must be defined with sufficient precision to enable the court to determine

-8-

the parties' obligations."). If the terms of the contract are not sufficiently clear, the court will not order specific performance. See Johnson v. Snell, 504 S.W.2d 397, 398 (Tex. 1974) ("Specific performance will be decreed only if the essential terms of the contract are expressed with reasonable certainty."); Walzem Dev. Co., Inc. v. Gerfers, 487 S.W.2d 219, 222 (Tex. Civ. App. -- San Antonio 1972, writ ref'd n.r.e.) ("Specific performance will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions of performance."). Courts also consider whether it is presently possible for the defendant to perform its obligations. See Canteen Corp., 773 S.W.2d at 401 ("It is well established that a court of equity will only order specific performance when present performance is possible."). If present performance is not possible, the court will not order specific performance. See id.

**B.  CBS's First Claim for Relief**

CBS alleges that the Remediation Agreement requires 5436 to "undertake the environmental actions required, necessary or reasonably calculated to effectuate a cleanup of the Property to industrial/ commercial regulatory standards."[10] Paragraph II.1 of the Remediation Agreement provides that 5436, as assignee of Elliot Valve, shall

---

[10]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 25.

take such environmental actions related to the removal or remediation of the solid wastes which exist or may exist at the Property and which may be required, necessary or reasonably calculated to effectuate a cleanup to industrial/commercial regulatory standards ("the Cleanup") including, but not limited, as applicable, (a) obtaining a Voluntary Cleanup Program Final Certificate of Completion from the Texas Commission on Environmental Quality ("TCEQ") for the Property; (b) preparation and submission to the TCEQ of assessments, forms, payments, reports and plans; (c) entering into agreements with the TCEQ; (d) entering into agreements with contractors for remedial or removal actions of the solid waste on or at the Property including, but not limited to, the preparation of assessments, reports and plans in connection with remedial and removal actions and (e) implementation of any institutional controls, including, but not limited to deed notices or deed restrictions to effectuate the Cleanup (each and all of the foregoing actions hereafter referred to individually and collectively as the "Actions").[11]

CBS alleges that 5436 has breached the Remediation Agreement "by failing to undertake the cleanup of the Property and perform the Actions as required therein."[12]  To remedy this breach, "CBS seeks specific performance of the contract by 5436, pursuant to the provisions of the Remediation Agreement."[13]  "CBS also seeks monetary damages from 5436's failure to mitigate damages by undertaking the cleanup and performing the Actions as required."[14]

_____

[11]Remediation Agreement, ¶ II.1 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).  See also CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 17 (quoting this paragraph of the Remediation Agreement).

[12]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 26.

[13]Id.

[14]Id.

It is undisputed that 5436 has conducted remediation activities on the Property. Therefore, as CBS's Response to 5436's Motion to Dismiss makes clear, CBS is not asserting that 5436 has not taken any action at all or that it has been injured by 5436's complete failure to act.[15] Instead, CBS is asserting that although 5436 has engaged in clean-up activities, those activities have not been consistent with or do not meet the standards required by the Remediation Agreement.[16] For example, paragraph II.1 requires 5436 "to take such environmental actions . . . which may be required, necessary or reasonably calculated to effectuate a cleanup to industrial/commercial regulatory standards . . . ."[17] CBS alleges that 5436 is engaging in activities that are not necessary or reasonably calculated to achieve industrial/commercial regulatory standards.[18]

1. <u>Specific Performance</u>

5436 contends that CBS's claim for specific performance fails because CBS has not alleged that it has no adequate remedy at law.[19]

---

[15]<u>See</u> CBS's Response, Docket Entry No. 64, at 10-13.

[16]<u>Id.</u>

[17]Remediation Agreement, ¶ II.1 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).

[18]<u>See</u> CBS's Response, Docket Entry No. 64, at 13.

[19]5436 asserts that CBS seeks money damages in addition to specific performance, not as an alternative remedy. 5436 argues that CBS cannot recover both remedies and suggests that by
(continued...)

Indeed, CBS has not explicitly asserted that damages will not adequately compensate it for this alleged breach.  As CBS points out, however, the plaintiff need not "allege in express terms that [it] does not have an adequate legal remedy" so long as "the facts brought out in the pleadings show such to be the case." <u>Madariaga v. Morris</u>, 639 S.W.2d 709, 711-12 (Tex. App. -- Tyler 1982, writ ref'd n.r.e.).  Nevertheless, CBS's complaint fails to state facts showing or explaining why damages would not adequately compensate it for this alleged breach.

Assuming that 5436 is engaging in remediation activities that are not in compliance with paragraph II.1 of the Remediation Agreement, CBS cannot and will not suffer actual injury unless and until it reimburses 5436 for its share of the costs associated with those non-complying activities.  CBS admits in its counterclaim that it has not, as yet, reimbursed 5436 for any expenses.[20]

_____

[19](...continued)
requesting damages in addition to specific performance, CBS implicitly admits that money damages are an adequate remedy.  5436 correctly states that a court may not award both specific performance and damages.  <u>See</u> <u>NRG Exploration, Inc. v. Rauch</u>, 905 S.W.2d 405, 410 (Tex. App. -- Austin 1995, writ denied).  A plaintiff, however, may plead both remedies in the alternative.  <u>See</u> Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  The court must "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor."  <u>Elsensohn</u>, 530 F.3d at 371-72.  Therefore, although CBS's First Amended Complaint does not use the words "in the alternative," the court nevertheless construes it to request the two remedies in the alternative, not to request both remedies.

[20]<u>See</u> CBS's First Amended Counterclaim, Docket Entry No. 57,
(continued...)

Although CBS tendered to 5436 payment for some expenses, 5436 did not accept the payment.[21]  If at some time in the future (1) CBS pays 5436, and (2) 5436 accepts payment, and (3) some of that payment reimburses 5436 for remediation activities that were inconsistent with the Remediation Agreement, CBS could then sue 5436 to recover the appropriate amount in money damages.  Such relief would constitute an adequate remedy at law.  See Slaughter, 597 S.W.2d at 16 (holding that a suit for damages in the future, which "would finally settle any liability under the indemnity agreement," was an adequate remedy at law for the plaintiff, who had not yet suffered any monetary loss from the indemnitor's failure to comply with the indemnity agreement).

Moreover, other equitable considerations foreclose a decree of specific performance of this contractual provision.  Paragraph II.1 of the Remediation Agreement is not definite enough for the court to "determine with reasonable certainty what is the duty of each party and the conditions of performance."  Gerfers, 487 S.W.2d at 222.  The court cannot readily discern what actions are "reasonably calculated to effectuate a cleanup to industrial/commercial regulatory standards."[22]  Although the agreement lists five examples

_____

[20](...continued)
¶ 16.

[21]Id.

[22]Remediation Agreement, ¶ II.1 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).  This vague language (continued...)

-13-

of what these actions may include, the actions are "not limited" to those examples listed.[23]  Furthermore, it is not at all clear to which "industrial/commercial regulatory standards" the parties are referring.   This provision is simply too vague for specific performance.   Moreover, decreeing specific performance of this provision would require the court to order 5436 to "perform a continuous series of acts which extend through a long period of time and [would] require constant supervision by the court."  South Plains Switching, Ltd., 255 S.W.3d at 703.   The court therefore concludes that CBS has failed to state a viable claim for specific performance.

    2.  Damages

    5436 asserts that CBS's claim for damages fails because failure to mitigate damages is an affirmative defense, not a claim for relief.  Under Texas law the doctrine of mitigation of damages is an affirmative defense that "prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff."  Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1, 908 S.W.2d 415, 426 (Tex. 1995).

---

[22](...continued)
differentiates this provision of the Remediation Agreement from the terms of a contract specifically enforced in a case cited by CBS, which provided that a site was to be remediated to a very specific and readily verifiable standard:  "to the complete satisfaction of the Illinois Department of Nuclear Safety ('IDNS')." Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 565 (7th Cir. 2000).

[23]Id.

-14-

CBS has not identified and the court is not aware of any case in which the doctrine of mitigation of damages was successfully employed to support an affirmative claim for damages. Moreover, CBS alleges that 5436 is the breaching party. Therefore, CBS -- not 5436 -- is the party with an obligation to mitigate its damages under the traditional doctrine of mitigation of damages. Accordingly, to the extent CBS asserts a claim based on the traditional theory of mitigation of damages, it has failed to state a viable claim.

As CBS's response to 5436's motion to dismiss makes clear, however, CBS is not truly asserting a claim based on 5436's failure to mitigate its damages.[24] CBS is actually alleging that 5436 has remediated the property in a manner not consistent with the Remediation Agreement and has thereby incurred improper and/or unreasonable expenses for which CBS believes it should not be required to reimburse 5436 under the Agreement.[25] Therefore, the court concludes that CBS's claim for damages does not fail merely because it is misleadingly phrased in terms of 5436's "failure to mitigate damages."

5436 also contends that CBS's claim for damages fails because CBS does not allege that CBS has incurred any actual pecuniary loss due to 5436's alleged breach. In fact, as explained above, CBS

---

[24]See CBS's Response, Docket Entry No. 64, at 10-13.

[25]See id.

admits in its counterclaim that 5436 has not yet accepted any reimbursement payments from CBS.[26]  CBS responds that it has nevertheless stated a valid breach of contract claim because even if it has not suffered any actual damages as a result of 5436's breach, Texas law entitles it to recover nominal damages.

5436 asserts that nominal damages are appropriate when the plaintiff has shown that he has suffered some actual harm, but has merely failed to prove the _amount_ of his damages to the necessary degree of certainty.  5436 correctly points out that several of the cases cited by CBS hold to that effect and, therefore, do not necessarily support CBS's position that it has stated a viable breach of contract claim for nominal damages.  See, e.g., Houston Pipeline Co. v. Oxy Petroleum, Inc., 597 S.W.2d 57, 59 (Tex. Civ. App. -- Corpus Christi 1980, writ dism'd); Hyatt v. Tate, 505 S.W.2d 373, 375 (Tex. Civ. App. -- Houston [1st Dist.] 1974, no writ); Atomic Fuel Extraction Corp. v. Slick's Estate, 386 S.W.2d 180, 190 (Tex. Civ. App. -- San Antonio 1964, writ ref'd n.r.e.).

One of the cases cited by CBS, however, holds that a plaintiff asserting a breach of contract claim may recover nominal damages if it can prove that a valid contract was breached even if it has not shown that it has incurred _any_ actual damages as a result.  In Huntington Corp. v. Inwood Construction Co., 472 S.W.2d 804, 808-09 (Tex. Civ. App. -- Dallas 1971, writ ref'd n.r.e.), the Court of

---

[26]See CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 16.

Appeals affirmed the trial court's award of nominal damages because the trial court could have credited the testimony of the defendant's expert witness that the plaintiff had incurred no actual pecuniary loss as a result of defendant's breach of contract.

Additionally, the court has identified another Texas case -- Fisher v. Westinghouse Credit Corp., 760 S.W.2d 802 (Tex. App. -- Dallas 1988, no writ) -- involving a situation even more analogous to this case.  In Fisher it was undisputed that the plaintiff had not paid a $2,081.03 charge for which the defendant had wrongfully requested payment and, therefore, had not suffered any pecuniary harm.  Fisher, 760 S.W.2d at 808.  Nevertheless, the Court of Appeals held that the defendant was not entitled to summary judgment on plaintiff's breach of contract claim because "such a charge would constitute a breach of contract" and, therefore, the plaintiff was "at least entitled to nominal damages."  Id.

Furthermore, statements in two other Texas cases suggest that a plaintiff need only show that a valid contract was breached to state a viable breach of contract claim entitling it to nominal damages.  In Lubbock Mfg. Co. v. Sames, 598 S.W.2d 234, 237 (Tex. 1980), the Texas Supreme Court cited several of the aforementioned cases and described them as "involv[ing] a breach of a contractual obligation where mere proof of the making and breach fully proved [the] plaintiff's cause of action for which he was entitled to recover at least nominal damages, regardless of whether actual

damages were proved." The court then distinguished the tort case at bar from the cited contract cases, explaining that "the creation of a contractual obligation to the plaintiff and its breach completely established a violation of a legal right of plaintiff, whereas, in an action in strict liability in tort a legal right of plaintiff is not violated unless there is physical harm to his person or property." <u>Sames</u>, 598 S.W.2d at 237. In <u>Trevino v. Sw. Bell Tel. Co.</u>, 582 S.W.2d 582, 584 (Tex. Civ. App. -- Corpus Christi 1979, no writ) (emphasis added), the Court of Civil Appeals stated that "[n]ominal damages are those damages recoverable where a legal right is to be vindicated against an invasion that produces <u>no actual loss</u>, or where, from the very nature of the case, some injury has been done, the amount of which the proof fails to show."

5436 points out that all of the cases discussed above are at least twenty years old. 5436 cites several recent cases that it contends show that Texas courts and federal courts applying Texas law now require a showing of at least some harm for a breach of contract claim to succeed. <u>See</u> <u>Eckland Consultants, Inc. v. Ryder, Stilwell Inc.</u>, 176 S.W.3d 80, 89 (Tex. App. -- Houston [1st Dist.] 2004, no pet.); <u>Taub v. Houston Pipeline Co.</u>, 75 S.W.3d 606, 617 (Tex. App. -- Texarkana 2002, pet. denied); <u>Sport Supply Group, Inc. v. Columbia Cas. Co.</u>, 335 F.3d 453, 465-66 (5th Cir. 2003); <u>Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.</u>, No. H-06-3457, 2008 WL 656508, at *4 (S.D. Tex. March 6, 2008); <u>Lexxus Int'l, Inc.</u>

v. Loghry, 512 F. Supp. 2d 647, 666 (N.D. Tex. 2007).   The court agrees that each of these cases holds that the plaintiff failed to prove its breach of contract claim because it failed to show that it had incurred any actual damages as a result of the defendant's breach, and neither holds that the plaintiff was nevertheless entitled to nominal damages.   It is possible, however, that these courts did not address nominal damages because the issue was not raised by the parties.   For example, in Taub the Court of Appeals specifically noted that the plaintiffs "may have suffered nominal damages, but they did not allege such damages in their response to the [defendant's] motion for summary judgment." Taub, 75 S.W.3d at 618.   More importantly, none of these cases purport to overrule or abrogate the established Texas precedent on nominal damages discussed above.   Therefore, the court concludes that CBS has stated a viable claim for breach of contract, but only to the extent it seeks nominal damages.

**C.   CBS's Second Claim for Relief**

CBS alleges that the Remediation Agreement requires 5436 "to pay its share of the reasonable and necessary third-party costs, as those costs are incurred, in connection with the Actions to remediate the Property."[27]   CBS is apparently referring to paragraph II.3 of the Remediation Agreement, which states, in pertinent part,

---

[27]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 28.

that the parties "agree to share equally in the reasonable and necessary third-party costs, as those costs are incurred, after the effective date of this Agreement in connection with the Actions and to promptly pay the Party incurring such costs one-half of the costs incurred by such Party."[28]   CBS alleges that 5436 "has breached the Remediation Agreement by failing to adhere to the terms of the contract, including those pertaining to payment of costs incurred in connection with the Actions to remediate the Property."[29]   "CBS seeks specific performance of the contract by 5436, pursuant to the provisions of the Remediation Agreement."[30]

5436 asserts that CBS has failed to allege why it does not have an adequate remedy at law.  5436 also argues that CBS has made only conclusory allegations that 5436 has breached this provision of the Remediation Agreement.

The court agrees that CBS has failed to plead "enough facts to state a claim to relief that is plausible on its face."   Twombly, 127 S. Ct. at 1965.  CBS simply states that the Remediation Agreement requires 5436 to pay its share of reasonable and necessary third-party costs and then conclusively alleges that 5436

---

[28]Remediation Agreement, ¶ II.3 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).  See also CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 20 (quoting this paragraph of the Remediation Agreement).

[29]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 29.

[30]Id.

has breached this provision.  CBS fails to provide examples of any third-party expenses for which 5436 has failed to promptly pay its share.

Moreover, the only relevant factual allegations included in CBS's pleading suggest that 5436 has paid all of the third-party costs incurred in remediating the property to date, while CBS has paid none.  CBS alleges that 5436 submitted invoices to CBS for reimbursement of one-half of expenses incurred by 5436 in remediating the property, that CBS tendered payment for its share of only some of those expenses, and that 5436 refused to accept CBS's tendered payment.[31]  These facts do not support a plausible breach of contract claim against 5436 based on paragraph II.3's requirement that the parties equally share third-party costs.  See Twombly, 127 S. Ct. at 1965.

The court also agrees that CBS has failed to make sufficient allegations explaining why it does not have an adequate remedy at law.  See Madariaga, 639 S.W.2d at 711-12 (explaining that a plaintiff seeking specific performance need not "allege in express terms that [it] does not have an adequate legal remedy" so long as "the facts brought out in the pleadings show such to be the case").  Assuming arguendo that there are certain third-party costs for which 5436 has not paid its share, CBS has not alleged and the

---

[31]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶¶ 14-16.

court cannot envisage any reason why a suit for damages would not adequately compensate CBS.  CBS's second claim for relief is not a viable claim for specific performance.

### D.   CBS's Third and Seventh Claims for Relief

CBS alleges that "5436 is contractually obligated to limit CBS'[s] exposure in connection with remediation of the Property to $100,000.00."[32]  Paragraph II.3 of the Remediation Agreement, after discussing each party's obligation to share equally in all reasonable and necessary third-party costs, states that "in no event shall CBS be required to pay more than $100,000."[33]  CBS alleges that "5436 has breached the Remediation Agreement by seeking costs or damages for cleanup from CBS in excess of $100,000.00 and in advance of the incurrence of such costs or damages."[34]

CBS also alleges that the Remediation Agreement limits 5436 to seeking reimbursement only for remediation costs incurred in remediation of the property.[35]  CBS alleges that 5436 breached this limitation of the Remediation Agreement when it "submitted invoices

---

[32]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 31.

[33]Remediation Agreement, ¶ II.3 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).  See also CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 20 (quoting this paragraph of the Remediation Agreement).

[34]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 32.

[35]Id. ¶ 45.

for cleanup of another property referred to in the invoice as 'Schumcher Co. -- Houston Facility' at 5610 Polk St., as well as costs identified in the invoice as 'ELLIOT VALVE PREPURCHASE EVALUATIO' (sic) which are not reimbursable under the Remediation Agreement."[36]  CBS seeks specific performance of the applicable contract provisions to remedy these alleged breaches of the Remediation Agreement.[37]

5436 contends, <u>inter alia</u>, that CBS has failed to adequately allege why it does not have an adequate remedy at law.  The court agrees.  As discussed above, CBS admits that 5436 has not yet accepted any reimbursement payments from CBS for any remediation expenses that 5436 has incurred.  Therefore, CBS has not yet paid its share for any remediation costs, much less has it paid more than $100,000 or paid for any expenses not related to remediating the property.  CBS has failed to explain why -- if at some time in the future CBS actually reimburses 5436 in an amount more than $100,000, or for expenses not yet incurred by 5436, or for expenses unrelated to remediating the property -- it could not sue 5436 for damages to recover the appropriate amounts.  <u>See</u> <u>Slaughter</u>, 597 S.W.2d at 16 (holding that a suit for damages in the future, which "would finally settle any liability under the indemnity agreement," was an adequate remedy at law for the plaintiff, who had not yet

---

[36]<u>Id.</u>

[37]<u>Id.</u> ¶¶ 32, 46.

suffered any monetary loss from the indemnitor's failure to comply with the indemnity agreement). Accordingly, CBS's third and seventh claims for relief are not viable claims for specific performance.

### E.   CBS's Fourth Claim for Relief

CBS alleges that

> 5436 is contractually obligated to report, communicate, and cooperate with CBS'[s] designated manager regarding the progress of the cleanup and the Actions. 5436 is further obligated under the Remediation Agreement to us[e] Groundwater Services, Inc. as the primary contractor for the Actions or seek[] CBS'[s] prior consent to change contractors and the selection and direction of the Actions.[38]

Paragraph II.2 of the Remediation Agreement provides that

> [5436] and CBS shall each designate a project manager who shall be responsible for overseeing the Actions and the implementation of this Agreement. All communications and documents between [5436] and CBS concerning the Actions shall, to the extent possible, be directed to the respective project manager. . . . A project manager may be changed effective upon written notice to the other party. The project managers shall cooperate with each other in the selection of the Actions and ensure that their respective contractors and subcontractors are provided with such information as they may reasonably require; provided, however, that the project manager designated by [5436] shall direct the performance of the Actions including, but not limited to, the selection of contractors and sub-contractors to perform the Actions, subject to the consent by CBS's project manager, which consent shall not be unreasonably withheld. For purposes of this Agreement [5436] and CBS agree that Groundwater Services, Inc. is an acceptable contractor for purposes of, to the fullest extent possible and subject to the

---

[38]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 34.

further determination by [5436] and CBS, serving as the primary contractor for the Actions.[39]

CBS alleges that 5436 has breached this provision of the Remediation Agreement in four ways: (1) "by failing to report, communicate, and cooperate with CBS's project manager," (2) "by failing to use Groundwater Services, Inc. as the primary contractor for the Actions," (3) "by retaining a contractor who has a conflict of interest regarding the Property," and (4) "by failing to give CBS written notice or otherwise seeking CBS's consent regarding the change in contractors and the selection and direction of the Actions."[40]  CBS seeks "specific performance of the contract by 5436 pursuant to the provisions contained in the Remediation Agreement," and "CBS further seeks monetary damages incurred as a result of 5436's selecting a contractor who is involved in remediation and other work being performed on behalf of Schumacher, a potentially responsible party in this matter."[41]

1.  <u>Specific Performance</u>

5436 asserts, among other things, that CBS has again failed to allege that it does not have an adequate remedy at law.  The court

---

[39]Remediation Agreement, ¶ II.2 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).  <u>See also</u> CBS's First Amended Counterclaim, Docket Entry No. 57, ¶¶ 18-19 (describing this paragraph of the Remediation Agreement).  Where the agreement refers to Elliot, the court has substituted 5436 since 5436 has allegedly obtained rights and obligations under the Remediation Agreement via assignment from Elliot.

[40]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 35.

[41]<u>Id.</u> ¶ 36.

agrees.  CBS has failed to explain why, if it actually suffers some financial harm in the future resulting from 5436's alleged failure to comply with paragraph II.2 of the Remediation Agreement, it cannot sue for damages and recover the appropriate amount.  See Slaughter, 597 S.W.2d at 16.  Furthermore, as 5436 points out, the provision of this paragraph requiring the parties' respective project managers to report, communicate, and cooperate with each other is too vague to specifically enforce.  See Gerfers, 487 S.W.2d at 222 ("Specific performance will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions of performance.").  Additionally, specifically enforcing paragraph II.2 would likely require the court to continuously supervise 5436's performance of a series of acts over an extended period of time.  See South Plains Switching, Ltd., 255 S.W.3d at 703.  Accordingly, CBS has failed to state a viable claim for specific performance.

    2.  Damages

    5436 asserts, among other things, that CBS has failed to state a valid breach of contract claim for damages because CBS has failed to allege that it has suffered any actual damages as a result of 5436's alleged breach of contract.  As explained in detail with regard to CBS's first claim for relief, CBS admits in its pleading that 5436 has not accepted any reimbursement payments from CBS and,

therefore, CBS has not suffered any actual pecuniary harm from any noncompliance with the Remediation Agreement on the part of 5436. Nevertheless, Texas law allows for breach of contract claims for nominal damages when the plaintiff has suffered no actual damages. See Fisher, 760 S.W.2d at 808; Huntington Corp., 472 S.W.2d at 808-09. Accordingly, assuming that 5436 has breached paragraph II.2 of the Remediation Agreement as CBS alleges, CBS has stated a valid breach of contract claim, but only to the extent is seeks nominal damages.

**F.   CBS's Fifth Claim for Relief**

CBS alleges that under the Remediation Agreement, "5436 is required to cooperate with CBS in identifying additional party(ies) responsible for contamination to the Property that originated from an offsite source, and in inviting by letter or legal means such responsible party(ies) to participate in the performance of the Actions."[42]   Paragraph II.4 of the Remediation Agreement states:

> In the event a reasonable determination can be made that the alleged contamination originates from an offsite source for which neither [5436] nor CBS is responsible, the parties agree to cooperate in identifying the responsible party(ies) and inviting by letter or legal means such responsible party(ies) to participate in the performance of the Actions, and/or to recover the costs incurred by [5436] and CBS.  Such decisions shall be made in good faith by [5436] and CBS without prejudice to either party pursuing a separate action against such responsible party(ies).  [5436] and CBS shall be entitled

---

[42]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 38.

to only those costs actually incurred, or to be incurred, by such party.[43]

CBS alleges that 5436 has breached this provision of the Remediation Agreement "by failing to communicate to CBS the likely existence of other responsible parties that 5436 has knowledge of, as documents that 5436 recently has provided to CBS suggest, and to cooperate with CBS in that regard . . . ."[44] CBS alleges that 5436 has also breached this provision "by using a contractor who is currently, or has in the past, conducted work on behalf of another potentially responsible party, Schumacher, whose principals include Paul Coselli, a principal in 5436."[45] "CBS seeks monetary damages suffered as a result of 5436's failure to cooperate by identifying responsible parties who may also be found responsible for remediation of the Property."[46]

5436 argues that CBS has failed to allege that it has suffered any actual damage as a result of 5436's alleged breach of this provision. Assuming 5436 has breached this provision in the ways that CBS alleges, CBS has not and will not suffer any actual

---

[43]Remediation Agreement, ¶ II.4 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A). See also CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 21 (describing this paragraph of the Remediation Agreement). Where the agreement refers to Elliot, the court has substituted 5436 since 5436 has allegedly obtained rights and obligations under the Remediation Agreement via assignment from Elliot.

[44]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 39.

[45]Id.

[46]Id. ¶ 40.

damages as a result of this alleged breach unless and until it reimburses 5436 for costs in an amount greater than what it would have owed had another responsible party also shared in the remediation costs.   Because CBS admits in its pleading that 5436 has not accepted any reimbursement payments from CBS, CBS has not suffered any actual injury to date as a result of this alleged breach.   Accordingly, CBS has stated a valid breach of contract claim only to the extent is seeks nominal damages.   See Fisher, 760 S.W.2d at 808; Huntington Corp., 472 S.W.2d at 808-09.

**G.   CBS's Sixth Claim for Relief**

CBS alleges that 5436 is required under the Remediation Agreement "to arbitrate all disputes, conflicts, and issues that arise from or are related to the agreement."[47]   The Remediation Agreement includes an arbitration clause providing that "[a]ll disputes, conflicts and issues that arise from or are related to this Agreement including, but not limited to, any dispute regarding the Actions taken or proposed to be taken by [5436], shall be referred to the American Arbitration Association for resolution of the dispute, conflict, or issue."[48]   CBS alleges that 5436 has

---

[47]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 42.

[48]Remediation Agreement, ¶ II.5 (included in 5436's Motion to Dismiss, Docket Entry No. 60, at Exhibit A).   See also CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 22 (describing this paragraph of the Remediation Agreement).   Where the agreement refers to Elliot, the court has substituted 5436 since 5436 has allegedly obtained rights and obligations under the Remediation Agreement via assignment from Elliot.

breached this provision of the Remediation Agreement "by failing to agree to the required arbitration, and instead, by filing this lawsuit against CBS."[49]   "CBS seeks monetary damages suffered as a result of 5436's failure to arbitrate all disputes, conflicts, and issues that arise from the agreement, including damages for costs and attorney's fees incurred in litigating this lawsuit."[50]

5436 argues that CBS has failed to state a claim because this court has already held that the arbitration clause does not require 5436 to arbitrate its CERCLA and TSWDA claims against CBS and, therefore, that 5436 did not breach the agreement by initiating this action.   In its prior Memorandum Opinion and Order in this case, the court concluded that because 5436 was not initially a party to the Remediation Agreement and had neither sued CBS based on the Remediation Agreement nor actually obtained any benefits under the Remediation Agreement, 5436 was not bound by the arbitration clause in the Remediation Agreement.[51]   CBS has not alleged any facts in its counterclaim that, if assumed to be true, would change the court's conclusion.   Accordingly, the court again concludes that 5436 is not bound by the arbitration clause in the Remediation Agreement.   Because 5436 is not bound by the arbitration clause, it could not have breached it.

---

[49]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 42.

[50]Id. ¶ 43.

[51]Memorandum Opinion and Order, Docket Entry No. 17, at 15-16.

Moreover, the court has no authority under the Federal Arbitration Act ("FAA") to award damages based on 5436's failure to submit to arbitration. As the Fifth Circuit explained in <u>Gulf Guaranty Life Insurance Co. v. Connecticut General Life Insurance Co.</u>, 304 F.3d 476, 486-87 (5th Cir. 2002), the "court's role in the arbitral process prior to issuance of an award in the event of a claimed 'default' of that process" is limited by § 4 of the FAA. Section 4 of the FAA limits the court only to "determin[ing] . . . whether an agreement to arbitrate exists and enforc[ing] . . . that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred." <u>Gulf Guar. Life Ins. Co.</u>, 304 F.3d at 487. <u>See also</u> 9 U.S.C. § 4. Section 4 therefore does not "authorize compensation by a court to parties in the form of damages prior to issuance of an arbitral award." <u>Gulf Guar. Life Ins. Co.</u>, 304 F.3d at 487. Accordingly, CBS has failed to state a valid claim for damages based on 5436's alleged breach of the Remediation Agreement's arbitration clause.

**H.   CBS's Eighth Claim for Relief**

Paragraph II.7 of the Remediation Agreement provides:

Save and except the terms of this Agreement and the obligations to be performed hereunder, each Party agrees to release the others from all existing and future claims, demands, and causes of action, whether choate or inchoate, known or unknown, pending or threatened, whether owned or obtained through assignment, whether based in statute, contract, tort or property, for all

existing and future damages and remedies related to the
release or threatened release of solid wastes at the
Property.    Notwithstanding anything to the contrary
contained herein, each Party expressly reserves all
rights and does not release any person or entity not a
party to this Agreement.[52]

CBS alleges that, "[a]s assignee of the Remediation Agreement, 5436
is bound by the release language contained in paragraph II.7."[53]
CBS alleges that "5436 has breached the contract by failing to
honor the release and by filing a lawsuit against CBS, which has
resulted in CBS incurring additional expenses and attorney's
fees."[54]  To remedy this alleged breach, "CBS seeks monetary damages
. . ., including damages for costs and attorney's fees incurred in
litigating this lawsuit."[55]

5436 asserts that release is an affirmative defense, not a
separate cause of action.  5436 contends therefore that CBS cannot
recover attorney's fees and other litigation costs as damages for
5436's alleged breach of the release provision of the Remediation
Agreement.  5436 cites several cases in support of its position.
See Hatco Corp. v. W.R. Grace & Co., 59 F.3d 400, 411 n.8 (3d Cir.
1995) (noting that the defendant's purported "counterclaim" based

---

[52]Remediation Agreement, ¶ II.7 (included in 5436's Motion to
Dismiss, Docket Entry No. 60, at Exhibit A).  See also CBS's First
Amended Counterclaim, Docket Entry No. 57, ¶ 23 (quoting this
paragraph of the Remediation Agreement).

[53]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 48.

[54]Id.

[55]Id. ¶ 49.

on a release agreement between the parties "should have been
pleaded as an affirmative defense"); Buller v. Owner Operator
Indep. Driver Risk Retention Group, Inc., 461 F. Supp. 2d 757,
766-67 (S.D. Ill. 2006) (holding that defendant's purported
counterclaim for damages for breach of a settlement agreement was
correctly characterized as an affirmative defense and was
prohibited by the general rule that litigation expenses "are not
recoverable as items of damages as a matter of contract law, . . .
and the familiar 'American Rule' generally prohibiting shifting of
attorney's fees"); Carroll v. Primerica Fin. Servs. Ins. Mktg., 811
F. Supp. 1558, 1567-68 (N.D. Ga. 1992) (dismissing the defendant's
counterclaim against the plaintiffs seeking damages for the alleged
breach of release agreements and concluding that "the Defendant may
use the releases only as a shield, and not as a sword" because the
plaintiffs had asserted their claims in the good faith belief that
they were not bound by the releases); Isaacs v. Caterpillar, Inc.,
702 F. Supp. 711, 713-14 (C.D. Ill. 1988) (concluding that, under
Illinois law, the defendant's counterclaim for damages for breach
of a release agreement was not viable because, inter alia, (1) the
release agreement did not specifically provide for damages in the
event of breach, (2) the plaintiffs had not brought their suit in
bad faith, and (3) expenses incurred in defending a lawsuit cannot
be recovered as damages for breach of contract).   5436, however,
notes the existence of a single case that does not support its
position.  See Widener v. Arco Oil & Gas Co., 717 F. Supp. 1211,

1217 (N.D. Tex. 1989) (holding that "[t]he breach of a release may be grounds for an action for damages," and that "the damages a releasor suffers when the release is breached are its costs and attorney's fees incurred in defending against the wrongfully brought action" (citing Anchor Motor Freight, Inc. v. Int'l Brotherhood of Teamsters, 700 F.2d 1067, 1071-72 (6th Cir. 1983); Borbely v. Nationwide Mut. Ins., Co., 547 F. Supp. 959, 977 (D.N.J. 1981)).

In response, CBS does not cite any case in which a party successfully asserted a claim for damages based on the breach of a release provision. Instead, CBS merely attempts to distinguish the facts of one of the cases cited by 5436 and cites two cases for the proposition that some affirmative defenses can also be asserted as claims for damages.[56]  See Country Hollow Joint Venture v. Enter. Capital Co., No. 92-5570, 1992 WL 352653, at *2 (5th Cir. Nov. 23, 1992) (explaining that the defendant had asserted and would bear the burden of proving "fraud both as a counterclaim and as an affirmative defense"); Admiral Ins. Co. v. Brinkcraft Dev., Ltd., 921 F.2d 591, 592 (5th Cir. 1991) (explaining that the defendants "filed an answer and counterclaim in which they plead usury both as an affirmative defense and as a ground of recovery").  These cases are not particularly helpful because neither involves release. Just because certain affirmative defenses may also be asserted

---

[56]See CBS's Response, Docket Entry No. 64, at 21-22.

-34-

offensively as claims for damages does not mean that all affirmative defenses may be asserted offensively as claims for damages.

Neither party cites any cases that applied Texas law, which governs CBS's breach of contract claims. The court's own research reveals that Texas law clearly recognizes release as an affirmative defense, see, e.g., MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51, 64 (Tex. App. -- San Antonio 2005, pet. denied) ("A release extinguishes any claim the releasor might have against the releasee . . . . A release is designated as an affirmative defense . . . ."), but the court was unable to identify any Texas cases in which a party successfully recovered attorney's fees and other litigation expenses as damages for breach of a release agreement.

Under Texas law "[a]ttorney's fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages." Melson v. Stemma Exploration and Prod. Co., 801 S.W.2d 601, 603 (Tex. App. -- Dallas 1990, no writ). Accordingly, Texas courts have consistently held that attorney's fees and other litigation costs are only recoverable if specifically authorized by statute or contract. E.g., Intercontinental Group P'ship v. KB Home Lone Star L.P., --- S.W.3d ---, 2009 WL 2667854, at *2 (Tex. Aug. 28, 2009) ("[L]itigants' attorney's fees are recoverable only if authorized by statute or by a contract between the parties."); Dallas Cent. Appraisal Dist. v.

-35-

Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992) ("Attorney's fees may
not be recovered unless provided for by statute or by contract
between the parties."); New Amsterdam Cas. Co. v. Tex. Indus.,
Inc., 414 S.W.2d 914, 915 (Tex. 1967) ("[A]ttorney's fees are not
recoverable either in an action in tort or a suit upon a contract
unless provided by statute or by contract between the parties.");
Eberts v. BusinessPeople Personnel Servs., 620 S.W.2d 861, 863
(Tex. Civ. App. -- Dallas 1981, no writ) ("Expenses of litigation
are not recoverable as damages unless expressly provided by statute
or contract.").

       Consistent with these principles, Texas courts have not
allowed defendants to recover attorney's fees and litigation
expenses as damages on counterclaims for breach of a release
agreement or covenant not to sue.   In Jobe v. Texas Utilities
Electric Company the defendant filed a counterclaim against the
plaintiff alleging breach of a release agreement and seeking
"damages in the form of attorney's fees."   Jobe v. Tex. Utils.
Elec. Co., No. 05-94-01368-CV, 1995 WL 479645, at *1 (Tex. App. --
Dallas Aug. 14, 1995, no writ).   The trial court found for the
defendant on its counterclaim and "awarded [the defendant] $40,000
in damages for attorney's fees incurred at trial."   Id.  The Court
of Appeals reversed the trial court's award of attorney's fees
because attorney's fees "are not ordinarily recoverable as actual
damages," "[t]he release does not contain a provision allowing [the
defendant] to recover attorney's fees from [the plaintiff]," and

the defendant had failed to cite any "statute allowing it to recover attorney's fees in this case." Id. at *6.

Similarly, in <u>Casparay v. Woodruff</u> the defendants filed a counterclaim against the plaintiff for damages in the amount of their attorney's fees for breach of a covenant not to sue. <u>Casparay v. Woodruff</u>, No. 13-98-106-CV, 2000 WL 35729203, at *1-2 (Tex. App. -- Corpus Christi Aug. 21, 2000, pet. denied). The jury found that the plaintiff had breached the covenant not to sue by initiating the action at bar, <u>id.</u> at *2, and the trial court awarded the defendants "their reasonable and necessary attorneys' fees as damages for breach of the covenant not to sue" in the amount of $596,201.60. <u>Id.</u> at *11. The Court of Appeals affirmed the award of attorney's fees, but explained that the trial court was wrong in awarding attorney's fees as damages for breach of the covenant not to sue. <u>Id.</u> at *11-13. The Court of Appeals instead concluded that the award of attorney's fees was authorized under Texas Civil Practice and Remedies Code § 38.001, which the defendants had specifically invoked, and "equitable principles." <u>Id.</u> at *12-13.

In light of these cases the court concludes that CBS cannot recover its attorney's fees and litigation expenses as damages for 5436's alleged breach of the release provision of the Remediation Agreement. Accordingly, the court concludes that CBS's eighth claim for relief is not viable.[57]

---

[57]In a separate part of its counterclaim CBS seeks to recover (continued...)

**I.   CBS's Request for Declaratory Judgment**

Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, CBS seeks a declaration of its rights and obligations under the Remediation Agreement.[58]  Specifically, CBS seeks the following declarations:

(1)   The Remediation Agreement is a legally binding and enforceable contract;

(2)   the Remediation Agreement was conveyed to 5436 by Elliot;

(3)   5436 assumed Elliot's rights and obligations under the Remediation Agreement;

(4)   5436 is obligated under the Remediation Agreement to undertake the cleanup of the property and perform the Actions as required therein;

(5)   5436 is required to adhere to the terms of the contract pertaining to payment of costs incurred in connection with the Actions to remediate the property;

(6)   5436 is precluded from seeking costs or damages for cleanup from CBS in excess of $100,000 and in advance of the incurrence of such costs or damages;

(7)   5436 is required to report, communicate, and cooperate with CBS's project manager;

---

[57](...continued)
attorney's fees and expenses under Texas Civil Practice and Remedies Code § 38.001.  CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 54.  The court does not now address this request. The court concludes only that CBS's eighth claim for relief fails to state a valid claim because it seeks to recover attorney's fees and other litigation costs as <u>damages</u> for breach of the Remediation Agreement's release provision.

[58]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 51.

(8)  5436 is required to use Groundwater Services, Inc. as the primary contractor for the Actions;

(9)  5436 is required to give CBS written notice or otherwise seek CBS's consent regarding the change in contractors and the selection and direction of the Actions;

(10) 5436 is obligated to communicate to CBS the likely existence of other responsible parties;

(11) 5436 is required to arbitrate this dispute;

(12) 5436 is required to submit invoices for remediation costs and Actions that relate solely to the remediation of the property; and

(13) the release clause of the Remediation Agreement precludes 5436's suit against CBS.[59]

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Under the DJA the court has "substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 115 S. Ct. 2137, 2142 (1995).  "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."  Id. at 2143.

5436 contends that the issues raised by the declarations sought by CBS will be decided by the adjudication of CBS's

---

[59]Id. ¶¶ 51-52.

counterclaims and affirmative defenses and, therefore, that the court need not issue a declaratory judgment deciding the same questions. 5436 cites a number of cases in which courts declined to entertain declaratory judgment actions because ruling on the requested declarations would have involved resolution of issues already before the court in the form of other claims and/or defenses. <u>See, e.g.</u>, <u>Xtria LLC v. Tracking Sys., Inc.</u>, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing the plaintiff's declaratory judgment action because it "essentially duplicates [the plaintiff's] breach of contract claim"); <u>Scritchfield v. Mutual of Omaha Ins. Co.</u>, 341 F. Supp. 2d 675, 682 (E.D. Tex. 2004) (dismissing plaintiffs' declaratory judgment claims because "[p]laintiffs would get nothing from a declaratory judgement [sic] that they would not get from prevailing on their breach of contract claims").

In response, CBS persuasively argues that its request for declaratory relief is not redundant because, while its claims for damages and specific performance are aimed at remedying alleged past breaches of the Remediation Agreement, "the declaratory action will control the ongoing and <u>future</u> relationship between CBS and 5436 regarding the continuing remediation of the Property."[60]   CBS also cites two cases in which courts found this factor to be important in declining to dismiss declaratory actions. See <u>Trammel</u>

---

[60]CBS's Response, Docket Entry No. 64, at 22.

<u>Crow Residential Co. v. Va. Surety Co., Inc.</u>, --- F. Supp. 2d ---, No. 3:08-CV-0501-D, 2008 WL 5062132, at *8 & n.15 (N.D. Tex. Dec. 1, 2008) (granting the declaratory relief sought by the plaintiff and explaining that it was "not duplicative of [the plaintiff's] breach of contract claim" because it declared that the defendant had "a continuing duty" to perform under the contract, while the breach of contract claim only remedied the defendant's past breach); <u>Perido Sun Condominium Ass'n, Inc. v. Nationwide Mut. Ins. Co.</u>, No. 3:06cv318/MCR, 2007 WL 2565990, at *4 (N.D. Fla. Aug. 30, 2007) (denying the defendant's motion to dismiss the plaintiff's declaratory judgment claim because it could "afford [the plaintiff] more relief than it would receive simply by prevailing on its breach of contract claim," and because it could resolve the parties' "'ongoing controversy'" and "'possible future events'").

As in the two cases cited by CBS, the declaratory relief sought by CBS seeks to define the ongoing and future duties of the parties under the governing contract. Furthermore, even if 5436's surviving counterclaims and its affirmative defenses would provide it with adequate relief, Federal Rule of Civil Procedure 57 specifically provides that "another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The court has already concluded that many of CBS's claims for damages and specific performance are not viable

and will dismiss them.   Therefore, CBS's declaratory claims will not overlap with CBS's other remaining counterclaims and defenses to the extent anticipated by 5436.

5436 also argues that the court should not entertain CBS's declaratory claims because CBS has failed to allege that "'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" Certain Underwriters at Lloyd's London v. A&D Interests, Inc., 197 F. Supp. 2d 741, 749 (S.D. Tex. 2002) (quoting Middle South Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490 (5th Cir. 1986)).   The court disagrees.   Drawing all reasonable inferences from the facts alleged by CBS, as the court must do at this stage of this litigation, see Elsensohn, 530 F.3d at 371-72, the court concludes that there is a substantial controversy between the parties as to the parties' respective rights and obligations, if any, under the Remediation Agreement.

Notwithstanding the foregoing, the court declines to consider one of the declarations sought by CBS.   CBS seeks a declaration that "5436 is required to arbitrate this dispute."[61]   As this court concluded in its February 19, 2009, Memorandum Opinion and Order and explained again above, 5436 -- a nonsignatory to the Remediation Agreement -- "has not exploited the Remediation Agreement to the degree required" to be bound by the arbitration

---

[61]CBS's First Amended Counterclaim, Docket Entry No. 57, ¶ 52.

clause in the Remediation Agreement.[62]  The court is not persuaded that it should reconsider this conclusion.

### IV.  Conclusion and Order

Based on the foregoing, Plaintiff/Counter-Defendant 5436's Amended Motion to Dismiss Defendant/Counter-Plaintiff CBS's First Amended Counterclaim for Failure to State a Claim Under Rule 12(b)(6) (Docket Entry No. 60) is **GRANTED in part and DENIED in part**.  All claims asserted in CBS's First Amended Counterclaim (Docket Entry No. 57) are **DISMISSED**, except for CBS's First, Fourth, and Fifth Claims for Relief to the extent they seek nominal damages, and CBS's Request for Declaratory Judgment.  The court, however, will not consider CBS's request for a declaration that 5436 is required to arbitrate this dispute.

The court will hold a hearing on October 30, 2009, at 2:00 p.m. in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, TX 77002.

**SIGNED** at Houston, Texas, on this 16th day of October, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[62]Memorandum Opinion and Order, Docket Entry No. 17, at 16.